UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                  Case No. 10-20388
                                              Honorable Mark A. Goldsmith

D-1    LAMONTE WATSON, JR.,
D-2    ISAAC DENEL MEEKS,
D-3    SHAWN RENARD SMITH,
D-4    TIMOTHY GRAYSON,
D-5    ANTONIO WATSON,
D-6    HANSEL WILLIAMS,
D-7    TERRANCE ALEXANDER,
D-9    DUANE WILLIAMS,
D-10  DAMICHAEL WASHINGTON,
D-12  LEMETRIUS KNAPP,
D-13  ROQUAN WESLEY,

        Defendants.
_____/


**OPINION AND ORDER (1) DENYING DEFENDANT TERRANCE ALEXANDER'S "MOTION FOR NOTICE UNDER RULES 404(B) AND 609 OF THE FEDERAL RULES OF EVIDENCE" (D.E. 140), DEFENDANT TERRANCE ALEXANDER'S "MOTION AND DEMAND FOR DISCLOSURE OF EXCULPATORY EVIDENCE AND RULE 16 DISCOVERY MATERIALS" (D.E. 141), AND DEFENDANT LAMONTE WATSON, JR.'S "MOTION TO REQUIRE GOVERNMENT TO PRODUCE NAMES OF CONFIDENTIAL SOURCES" (D.E. 236); (2) DENYING DEFENDANT DAMICHAEL WASHINGTON'S "MOTION FOR BILL OF PARTICULARS" (D.E. 189); (3) DENYINIG DEFENDANT LAMONTE WATSON, JR.'S "MOTION TO MERGE COUNTS III AND IV OF THE INDICTMENT BASED ON MULTIPLICITY OF COUNTS" (D.E. 237); AND (4) GRANTING IN PART AND DENYING IN PART DEFENDANT LAMONTE WATSON, JR.'S REQUEST FOR AN "ORDER REQUIRING GOVERNMENT'S STIPULATION REGARDING COUNT VI PURSUANT TO OLD CHIEF [V.] UNITED STATES[, 519 U.S. 172 (1997)]" (D.E. 264)**


        Before the Court are the following motions:

1)  Defendant Terrance Alexander's "Motion for Notice Under Rules 404(b) and 609 of the Federal Rules of Evidence" (D.E. 140).
2)  Defendant Terrance Alexander's "Motion and Demand for Disclosure of Exculpatory Evidence and Rule 16 Discovery Materials" (D.E. 141).
3)  Defendant Damichael Washington's "Motion for Bill of Particulars" (D.E. 189).
4)  Defendant Lamonte Watson, Jr.'s "Motion to Require Government to Produce Names of Confidential Sources" (D.E. 236).
5)  Defendant Lamonte Watson, Jr.'s "Motion to Merge Counts III and IV of the Indictment Based on Multiplicity of Counts" (D.E. 237).
6)  Defendant Lamonte Watson, Jr.'s request for an "Order Requiring Government's Stipulation Regarding Count VI Pursuant to <u>Old Chief [v.] United States</u>[, 519 U.S. 172 (1997)]" (D.E. 264).

The Court has received briefing and heard oral argument on all of the motions.

I.    **Docket entries 140, 141, 236**

   A.    **Background**

On January 25, 2011, the government and several Defendants submitted a stipulation to this Court.  <u>See</u> D.E. 240.  The stipulation provides that the government (i) understands its production requirements under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and Federal Rule of Criminal Procedure 16, and will comply with those requirements, (ii) acknowledges its obligation to provide notice of intent to offer any evidence under Federal Rule of Evidence 404, and (iii) agrees to produce all material it possesses governed by the Jencks Act, 18 U.S.C. 3500(b), along with impeachment material, plea agreements, and any other consideration given, not later than ten days prior to trial.  D.E. 240. Four Defendants – Terrance Alexander, Timothy Grayson, and Lamonte Watson, Jr., and Roquan Wesley – did not agree to the stipulation.

Defendant Alexander had previously filed a "Motion for Notice Under Rules 404(b) and 609 of the Federal Rules of Evidence" (D.E. 140) and a "Motion and Demand for Disclosure of Exculpatory Evidence and Rule 16 Discovery Materials" (D.E. 141).  Defendants Grayson,

Wesley, and Lamonte Watson, Jr. joined in those motions. In light of these Defendants' continuing opposition to the stipulation and pending requests for disclosure from the government, the Court directed them to address whether they sought disclosures additional to those addressed in the stipulation and/or more prompt disclosure than that outlined in the stipulation, along with the legal basis for their positions. D.E. 269 at 5. In response, Defendant Terrance Alexander submitted a supplemental brief (D.E. 270), and Defendant Timothy Grayson submitted a supplemental brief (D.E. 272). Although Defendant Lamonte Watson did not file a supplemental brief, he did file a motion to require the government to produce the names of confidential sources (D.E. 236),[1] which Defendant Roquan Wesley joined.

In his supplemental filing, Defendant Alexander requests Jencks materials at least a few days prior to the plea bargain deadline (now April 27, 2011).[2] D.E. 270 at 1-2. Alexander argues that disclosure before plea cutoff is necessary because a defendant is often reluctant to plead to an offer until he has seen what co-conspirators or co-defendants are planning to say about him at trial. Alexander also requests "other material" that he requested in his previous motion for "Disclosure of Exculpatory Evidence and Rule 16 Discovery Materials" (D.E. 141), and asks that that information be provided within the time period provided by the government's stipulation. D.E. 270 at 2-3.[3]

---

[1] As Watson's motion predated this Court's February 9, 2011 Order, it could not have been submitted in response to it. However, because the motion raises disclosure claims, it makes sense to include it in this discussion.

[2] The date the stipulation provides for turning over Jencks material is ten days before trial, or April 29, 2011.

[3] This "other material" includes:

- "Any facts or allegations concerning criminal or other misconduct of the [potential witness testifying against the Defendant] not contained in his criminal

In his supplemental filing, Defendant Grayson requests that the government be required to provide "Jencks, <u>Brady</u>, and <u>Gig[lio]</u> material," along with all "exculpatory material" before the plea cutoff. D.E. 272 at 1-2.[4]  Grayson argues that disclosure sooner than ten days before trial is necessary to allow adequate time for preparation and plea negotiation. D.E. 272 at 5.

---

record, including any material information found in his probation file or any pending criminal charge or investigation against the witness."

- "Any information which shows testimony of a witness was in any way motivated by personal animosity or feelings of revenge toward a defendant."

- "Copies of any body tapes or consensual recording by FBI agents, DEA agents, IRS agents, ATF agents, or Postal Inspectors, made and in any way relating to this incident."

- "Any information relating to pressure, threats or other coercion made or directed against a witness or person of concern to the witness including, but not limited to: criminal prosecutions, government investigation or potential prosecutions, any and all civil, tax forfeitures, licensing or other potential legal disputes with the government or with entities over which the government has any real, apparent or perceived influence."

D.E. 141 ¶ 7-10.

[4] By "all exculpatory material," Grayson means at a minimum:

A)  All consideration or promises of consideration given to or on behalf of a witness, or expected or hoped for by the witness. By "consideration" Defendant refers to anything, whether bargained for or not, which arguably could be of value or use to a witness or to persons of concern to the witness;
B)  All threats or other coercion made or directed against a witness or persons of concern to the witness;
C)  All records or information revealing prior felony convictions, misdemeanor convictions or juvenile adjudications of the Defendant and each witness the Government intends to call at trial, including but not limited to relevant "rap sheets";
D)  All records or information revealing prior misconduct or bad acts of each witness the government intends to call at trial which could be used to impeach the witness;
E)  The existence and identification of each occasion on which the witness has testified before any Court, Grand Jury or other tribunal or body, or has otherwise officially made a statement in relation to Defendants, the investigation, or the facts of the case herein;

In his "Motion to Require Government to Produce Names of Confidential Sources," Defendant Lamonte Watson, Jr., requests that the government disclose the names of its confidential sources at least 60 days before trial. D.E. 236. Watson claims that this is necessary so that counsel has the opportunity to prepare an effective cross-examination of those witnesses, in particular to allow for the ordering of transcripts from prior plea hearings and sentencings. D.E. 236 at 3. Watson acknowledges that the Jencks Act allows for the Court to recess trial proceedings to allow a defendant to prepare for cross-examining such witnesses, but maintains that it would be more convenient to require the government to produce the information before trial, thereby avoiding in-trial delays. Id. at 4. In order to address the government's concerns about the confidential witnesses' safety, Watson's counsel proposes that the government could disclose the informants to him, and he would agree not to disclose them to his client or anyone else while preparing for cross-examination.

---

F)  The existence and identification of each occasion on which each witness who was or is an informer, undercover agent, accomplice, or expert has testified before any court, Grand Jury or other tribunal or body;

G)  The existence and identification of each occasion on which each witness may have testified falsely under oath, or submitted false affidavits in connection with proceedings of any kind, including but not limited to forfeiture proceedings, or each occasion on which each witness may have made inconsistent statements in connection with this case, and a summary of such inconsistent statements;

H)  The identity of any witness who has information that would call into question the credibility of any government witness, or any documents or letters from any person or organization that would call into question the credibility of any government witness;

I)  All other records and/or information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the Government's evidence or which arguably could lead to such records or information in which is located material exculpatory either to guilt or punishment.

D.E. 272 at 2-3. The scope of this request is similar to that in Defendant Alexander's original motion. See D.E. 141 at 3-7.

B.     **Analysis**

In most criminal prosecutions, three governing rules, (i) the Brady doctrine, Brady v. Maryland, 373 U.S. 83 (1962), (ii) Federal Rule of Criminal Procedure 16, and (iii) the Jencks Act, 18 U.S.C. § 3500, "exhaust the universe of discovery to which the defendant is entitled." United States v. Presser, 844 F.2d 1275, 1285 n.12 (6th Cir. 1988).  The Brady doctrine requires the government to disclose evidence that is favorable to the accused and material to guilt or sentencing.  Id. at 1281.[5]  Federal Rule of Criminal Procedure 16(a) "requires the government to disclose, upon a defendant's request, any oral or written statements of the defendant, the defendant's prior record, any documents or tangible evidence within the government's possession, custody or control, reports of examinations or tests, and a summary of any expert witness testimony."   United States v. Pegross, No. 05-80949, 2007 WL 1771542 at *1 (E.D. Mich. 2007).  The Jencks Act "generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at a trial."  United States v. Short, 671 F.2d 178, 185 (6th Cir. 1982).  Defendants' motions generally do not specify in which category (Brady, Rule 16 or Jencks) the discovery they request belongs.  The Court observes that the requests appear to fall into all three categories.   Accordingly, the Court addresses the required timing of the disclosures of all three types of disclosures.

Only the specific categories of evidence outlined in Rule 16 are required to be disclosed before trial.  See Presser, 844 F.2d at 1284-1285 (6th Cir. 1988).  (The Rule requires disclosures "upon a defendant's request."  Fed. R. Crim. P. 16(a).)   Courts have concluded that the

---

[5] "This rule also extends to evidence which could be used to impeach the credibility of a government witness."   United States v. Pegross, No. 05-80949, 2007 WL 1771542 at *2 (E.D. Mich. 2007) (citing Giglio v. United States, 405 U.S. 150, 154-55 (1972)).

government's assurance that it is aware of its obligations under Rule 16 (as has happened here) is sufficient, and does not compel pre-trial discovery.  See, e.g., Pegross, 2007 WL 1771542 at *2. With regard to Brady and Jencks material, "so long as the defendant is given impeachment material, even exculpatory material, in time for use at trial," there is no constitutional violation. Presser, 844 F.2d at 1283.  Further, the Jencks Act prohibits a court from ordering disclosure of Jencks material before the witness has testified in direct examination.  See 18 U.S.C. §3500(a). Accordingly, it is clear that Defendants do not have a right to government disclosure of any of the information in question before the time set out by the stipulation.

Defendants' arguments to the contrary are unavailing.  Defendant Grayson urges release of Jencks information sooner than ten days before trial "as a matter of due process and fundamental fairness, based upon the [Sixth] Amendment of the Constitution as it relates to a fair trial and effective representation of counsel."  D.E. 272 at 1.  However, he does not cite any cases indicating that Jencks material must be disclosed prior to the close of a witness' testimony on direct examination at trial.[6]  Similarly, Defendant Alexander does not offer any legal authority for his request for earlier disclosure.

Lamonte Watson cites two out-of-circuit cases.  One, United State v. Falkowitz, 214 F. Supp. 2d 365, 392-94 (S.D.N.Y. 2002) concludes that although district courts are prohibited from ordering pre-trial disclosure of Jencks Act material, that prohibition does not apply if the material in question is exculpatory material pursuant to the Fourteenth Amendment (as expressed in Brady).  Id. at 394.  But even accepting the conclusion in Falkowitz, the fact that the Jencks timing prohibition does not apply to Brady material does not say anything affirmative about

---

[6] Grayson cites United States v. Narciso, 446 F. Supp. 252 (E.D. Mich. 1977), for the proposition that a court can require Jencks materials to be disclosed pretrial.  However, subsequent Sixth Circuit precedent is in conflict with Narciso.  See United States v. Algie, 667 F.2d 569, 570-72 (6th Cir. 1982) (reversing district judge who had forced government to disclose Jencks material up to 5 days before the relevant witness testified).  D.E. 272 at 4.

when Brady material must be disclosed.  Further, Watson does not argue that the government has and is withholding Brady material.  In his motion, he seeks only the disclosure of the names of confidential sources.  The second case cited by Watson, United States v. Kaplan, 554 F.2d 577, 580 (3d Cir. 1977), stands for the proposition that exculpatory material that was turned over to the defense in a "delayed" manner, but still during the trial, did not violate Brady.  See id. (no violation because exculpatory documents brought to jury's attention; "delayed disclosure by the prosecution is not per se reversible error").  Again, because Watson does not allege that the government is withholding Brady material, it is not clear what importance Kaplan has here.

Further, to the extent that Defendants argue that they are entitled to disclosure before the plea cut-off so that they might make a fully informed plea decision, the Supreme Court has foreclosed such an argument.  See United States v. Ruiz, 536 U.S. 622, 633 (2002) ("the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").  Similarly, to the extent Defendant Watson argues that he has a right to witness disclosure 60 days in advance of trial, the Sixth Circuit has stated that "ordinarily, a defendant is not entitled to a list of the names . . . of the government's witnesses."  United States v. Davis, 306 F.3d 398, 420 (6th Cir. 2002) (citing United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir. 1993)).

Accordingly, Defendants have not shown an entitlement to more prompt disclosure of the materials than is set out by the stipulation.  Nevertheless, the Court has discretion to order disclosure of Brady material prior to the time  disclosure is required in order to avoid a constitutional violation.  See United States v. Hart, 760 F. Supp. 653, 655 (E.D. Mich. 1991) ("Although . . . pretrial disclosure of Brady material is not required, it is clear that a district court has general authority to order pretrial disclosure of Brady material to ensure the effective

administration of the criminal justice system.") (internal quotation marks omitted); United States v. Jones, No. 10-20568, 2011 WL 551145 at *2 (E.D. Mich. Feb. 9, 2011).  The Court recognizes the valuable role that knowledge of Brady information has in permitting defendants to prepare a vigorous defense and thus preserving a criminal defendant's right to a fair trial.  Given that the government has stipulated to turn over "impeachment material" and Jencks Act material ten days before trial, there appears to be no basis for withholding any other material that would qualify as Brady material.  Accordingly, the Court directs the government to disclose all Brady material currently in its possession at least ten days before trial.

Similarly, the Court has the authority to order disclosure of the government's witness list in advance of trial.  See United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (per curiam) (although "[i]t is well recognized that defendants cannot obtain lists of prosecution witnesses as a matter of right," "the district court has discretion to order the prosecution to produce it").  In Kendricks, the trial court ordered disclosure at least 48 hours before trial.  See id.  Other courts have required earlier disclosure.  See United States v. Jackson, 508 F.2d 1001, 1006 (7th Cir. 1975) (district court has authority to order both parties to disclose their witness lists approximately three months before trial); United States v. West, No. 08 CR 669, 2010 WL 2293392, at *5 (N.D. Ill. Jun 2, 2010) (witness lists must be filed fourteen days before trial); United States v. Zhuta, No. 09CR357A, 2011 WL 1330855, at *1 (W.D.N.Y. April 6, 2011) (noting that local practice requires disclosure thirty days before trial).

Given that the government has agreed to turn over considerable materials that would identify witnesses ten days before trial, there does not appear to be any reason for withholding the names of witnesses at that point in time.  On the other hand, an earlier disclosure date is not warranted on this record because Defendants have not offered any particularized reasons for

requiring an earlier disclosure date for witnesses.  At most, Defendants speak of a generalized need to prepare for cross examination, but the fact of prior convictions – a prime basis for impeachment – should be determinable within a ten day timeframe.  Although Defendants contend they will need time to order sentencing and guilty plea transcripts, it is sheer speculation that there would be anything admissible in such transcripts beyond the conviction itself – and proof of the  conviction may be elicited through cross examination or a certified record, which will not require an extended period of time to obtain.  Accordingly, the Court will order the government to furnish Defendants with a witness list at least ten days before trial.  Should there be a security reason for withholding a name from the witness list, the government may move for a protective order within 72 hours of the issuance of this Opinion and Order.  Should a Defendant believe there is a particularized reason for additional time to prepare to address the testimony of a disclosed witness, the Court will entertain an adjournment of the trial.

## II.   Docket entry 189

### A.  Background

On November 24, 2010, Defendant Damichael Washington filed a motion requesting a bill of particulars.  D.E. 189.  On February 9, 2011, in connection with another motion filed by Defendant Washington, the Court ordered the government to prepare and submit an offer of proof describing its evidence of conspiracy.  The detailed offer of proof was submitted on March 1, 2011.  D.E. 290.  On March 3, 2011, Washington filed a response to the offer of proof arguing that the offer of proof infrequently referenced Washington and lacked evidence of Washington's participation in the conspiracy.  D.E. 295.   On March 4, 2011, the government filed in response a supplemental offer of proof.  The offer of proof detailed phone calls between Washington and co-Defendant Lamonte Watson  in  which  Watson  and  Washington  appear  to  discuss

Washington's difficulty in selling cocaine, whether Washington could return the cocaine to Watson, and the ability of Watson's other suppliers to distribute the cocaine. D.E. 296. Watson and Washington also appeared to discuss a better vehicle for Washington to drive in order to avoid law enforcement detection. Id. The government noted that it had already provided the phone calls to defense counsel in prior discovery.

### B. Analysis

The decision to order a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) is within the sound discretion of the trial court. United States v. Robinson, 390 F.3d 853, 867 (6th Cir. 2004). The Sixth Circuit has described the decision as follows:

> A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. United States v. Birmley, 529 F.2d 103, 108 (6th Cir. 1976); United States v. Haskins, 345 F.2d 111, 114 (6th Cir. 1965). It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial. United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978), cert. denied, 439 U.S. 819, 99 S. Ct. 80, 58 L. Ed. 2d 109, reh'g denied, 439 U.S. 997, 99 S. Ct. 599, 58 L. Ed. 2d 670; United States v. Lawson, 688 F. Supp. 314, 315 (S.D. Ohio 1987); United States v. Jones, 678 F. Supp. 1302, 1304 (S.D. Ohio 1988). Further, a defendant is not entitled to discover all the overt acts that might be proven at trial. United States v. Kilrain, 566 F.2d at 985.

United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993).

In light of Defendant's receipt of the government's offer of proof and supplemental offer of proof, in addition to the good deal of discovery that has been disclosed in this matter, the Court concludes that Defendant Washington has been given sufficient information as to the government's theories and evidence. At this point, there would be no substantial benefit to be realized by requiring a separate bill of particulars. Accordingly, the Court will deny the motion.

### III.    Docket entry 237

#### A.  Background

In his "Motion to Merge Counts III and IV of the Indictment Based on Multiplicity of Counts" (D.E. 237), Defendant Lamonte Watson, Jr., argues that because counts III and IV both charge possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), the counts are multiplicitous.  Watson acknowledges that the indictment specifies that count III charges possession with intent to distribute cocaine and that count IV charges possession with intent to distribute heroin, see D.E. 28 (superseding indictment), but argues that because the terms "heroin" and "cocaine" are not elements of the offense, the charges remain multiplicitous and should be merged.

#### B.  Analysis

As the government correctly argues, the Sixth Circuit decided this question in United States v. Pope, 561 F.2d 663 (6th Cir. 1977).  In Pope, the court concluded that the district court did not err in not consolidating two counts, one charging possession with intent to distribute under § 841(a)(1) with regard to heroin and the other charging the same with regard to methadone.  Id. at 669.

To the extent Watson may be understood to be making the alternative argument that, even if he is not entitled to merger, the Court has the discretion to merge the counts, the Court declines the invitation.  The only rationale that Watson gives for taking such action is to prevent "the possible psychological effect on the jury of suggesting the Defendant committed not one but several crimes based on the same act."  D.E. 237 at 3.  To the extent such a danger might exist, it may be prevented by ensuring that the jury is made aware that count III applies to cocaine and that count IV applies to heroin.

## IV.    Docket entry 264

### A.  Background

In his request for an "Order Requiring Government's Stipulation Regarding Count VI Pursuant to Old Chief [v.] United States[, 519 U.S. 172 (1997)]" (D.E. 264), Lamonte Watson, Jr., asks this Court to require that the government agree to a stipulation that he is a convicted felon for purposes of the felon-in-possession charge against him (Count VI).  Specifically, Watson asks that he be able to "plead on the record to his convicted felon[] status at the start to the trial," meaning that "the Government would not have to prove the allegations of Count VI of the Indictment" which set forth Watson's two prior felony drug convictions.  D.E. 264 at 1-2. Watson argues that the government should be forced to agree to the stipulation because the jury would be unfairly prejudiced if it had knowledge of his previous drug convictions.  Watson also requests that the jury "simply be told that Count VI is Possession of Firearms by a Prohibited Person and that the Defendant admits in this case that he is a person prohibited by law from possessing firearms.  The Government is not prejudiced by the handling of this issue in this way as they only have to prove [] whether or not the Defendant possessed the weapon."  D.E. 264 at 2.

### B.  Analysis

Watson's request finds some support in the Supreme Court case of Old Chief v. United States, 519 U.S. 172 (1997).  In Old Chief, the Court concluded that the district court erred by allowing the government to refuse to join the defendant's proposed stipulation to the prior-conviction element of 18 U.S.C. 922(g)(1) (prohibition on being a felon in possession of a firearm).  Id. at 174.  The Court's analysis turned on the facts that the trial court allowed the

government to present the full record of the prior conviction, which included the name and nature of the prior offense, evidence which, under the circumstances was unfairly prejudicial under Federal Rule of Evidence 403 (the defendant had previously been convicted of assault and was facing an assault charge in the case at issue). Id. at 191.

Accordingly, under Supreme Court precedent, Watson is entitled to make an admission (or a stipulation) that he is a felon. And that admission will trump any right the government has to present a more-detailed version of the conviction to the jury

However, Watson's proposal to tell the jury (i) that the relevant count is simply "possession of a firearm by a prohibited person" and (ii) that Watson admits that he is such a "prohibited person,"  presents a different question. Following Watson's proposal would mean that not only would the jury not know that his prior felony was a drug crime, but they would not know that he was a felon.

The government contends that the Court would be prevented from granting this request, citing United States v. Milton, 52 F.3d 78 (4th Cir. 1995). The government argues that Watson's proposal would likely entail the court instructing the jury that one element of the relevant charge had been proven, but the jury would not be aware of what that element was. Thus, the district court would be impermissibly modifying a criminal statute enacted by Congress and also impermissibly failing to instruct a jury of each and every essential element of an offense. See id. at 81.

Because Milton predates Old Chief, and Old Chief did not analyze the jury instructions in that case, it is not entirely clear what the continuing effect of Milton is. At least one district court has cited Milton, post Old-Chief, for the proposition that the jury must be informed of all elements of § 922(g), including those to which the defendant stipulated. See United States v.

14

Gordon, No. 3:04CV000230, 2004 WL 3331769 at *2 (W.D. Va. Sept. 2, 2004). Notably, the Gordon court rejected a proposal very similar to the one Watson proposes here. See id. at 1 (defendant who was an illegal alien, prohibited from possessing a firearm under § 922(g), admitted his illegal-alien status and then sought to keep evidence of that status (including his stipulation) from the jury and have it evaluate only whether he possessed a firearm).

In light of all of the above, the Court rules as follows. Watson may stipulate to having been convicted of a crime punishable by more than a year in prison, and the jury will be informed of that fact; but the jury will not be informed that he was convicted of a drug crime. This result is consistent with the fact that Watson does not establish any right to have his felon status kept from the jury, and the mechanics of doing so may violate the principles identified in Milton and Gordon. This result is also consistent with the Rule 403 considerations in Old Chief. As in Old Chief, it might be unfairly prejudicial for the jury to hear that Watson was previously convicted of the same crime for which he is currently on trial. The mere fact that he is a convicted felon – a fact the Old Chief Court did not raise as problematic – is far less prejudicial, especially in light of the fact that it is an element of the offense.

Finally, Watson also asks that Defendants be listed in the Indictment in alphabetical order in order to avoid the potential prejudice of him being known as the "number one guy." Watson does not cite any legal authority in support of this request, nor does the government address it. Rather than change the order of the now-standardized caption, the Court instead will simply instruct the jury that Defendants' order in the case caption is of no significance.

## V.    Pending motions

Several pending motions remain. The following motions are taken under advisement; the Court will issue a written opinion with regard to these motions:

1)      Defendant Damichael Washington's "Motion for Disclosure of, and to Limit the Scope of, Expert Testimony Regarding Drug 'Lingo' or 'Code'" (D.E. 186).

2)      Defendant Antonio Watson's "Motion to Limit Expert Testimony" (D.E. 192).

3)      Defendant Timothy Grayson's "Motion to Suppress Evidence" (D.E. 255).

4)      Defendant Antonio Watson's "Motion to Suppress and for <u>Franks</u> Hearing" (D.E. 256).

5)      Defendant Lamonte Watson, Jr.'s "Motion to Suppress Title III Intercepts" (D.E. 275).

Two additional motions await further action:

1)      Defendant Damichael Washington's "Motion for <u>Enright</u> Hearing and Ruling" (D.E. 190).

2)      Defendant Roquan Wesley's "Motion for Severance" (D.E. 253).

The <u>Enright</u> motion awaits completion of supplemental briefing as directed by this Court's order of April 1, 2011.  D.E. 314.  Briefing will be complete on April 28, 2011 and the Court will issue a written opinion after that date.  The severance motion is scheduled to be argued before this Court on April 27, 2011.  The Court will issue a written opinion after that date.

**VI.    Conclusion**

For the reasons set out above, the Court orders as follows:

- Defendant Terrance Alexander's "Motion for Notice Under Rules 404(b) and 609 of the Federal Rules of Evidence" (D.E. 140), his "Motion and Demand for Disclosure of Exculpatory Evidence and Rule 16 Discovery Materials" (D.E. 141), and Defendant Lamonte Watson, Jr.'s "Motion to Require Government to Produce Names of Confidential Sources" (D.E. 236) are DENIED.  However, the government is directed to (i) disclose all <u>Brady</u> materials and (ii) disclose its list of witnesses to all Defendants ten days before trial.

- Defendant Damichael Washington's "Motion for Bill of Particulars" (D.E. 189) is DENIED.

- Defendant Lamonte Watson, Jr.'s "Motion to Merge Counts III and IV of the Indictment Based on Multiplicity of Counts" (D.E. 237) is DENIED.

- Defendant Lamonte Watson, Jr.'s request for an "Order Requiring Government's Stipulation Regarding Count VI Pursuant to Old Chief [v.] United States[, 519 U.S. 172 (1997)]" (D.E. 264) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.


Dated:  April 19, 2011                                s/Mark A. Goldsmith
        Flint, Michigan                          MARK A. GOLDSMITH
                                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 19, 2011.

                                                 s/Deborah J. Goltz
                                                 DEBORAH J. GOLTZ
                                                 Case Manager