UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

       Plaintiff,

       v.                                                      Case No. 10-20388
                                                 Honorable Mark A. Goldsmith

D-1   LAMONTE WATSON, JR.,
D-4   TIMOTHY GRAYSON,
D-5   ANTONIO WATSON,

       Defendants.
_____/

**OPINION AND ORDER DENYING [DE#255] DEFENDANT TIMOTHY GRAYSON'S MOTION TO SUPPRESS EVIDENCE, [DE#256] DEFENDANT ANTONIO WATSON'S MOTION TO SUPPRESS AND FOR FRANKS HEARING AND [DE #275] LAMONTE WATSON, JR.'S MOTION TO SUPPRESS TITLE III INTERCEPTS**

Before the Court are the following motions:

1)    Defendant Timothy Grayson's "Motion to Suppress Evidence" [DE#255].
2)    Defendant Antonio Watson's "Motion to Suppress and for Franks Hearing" [DE#256].
3)    Defendant Lamonte Watson, Jr.'s "Motion to Suppress Title III Intercepts" [DE#275].

The Court has received briefing and heard oral argument on all of the motions. For the reasons set forth below, the Court will deny the motions.

I.      **Docket entries 255 & 256**

      **A.  Parties' Arguments**

Defendant Timothy Grayson and Defendant Antonio Watson filed motions to suppress; Watson also requests a Franks Hearing. See [DE#255, #256]. Their arguments are as follows.

Defendant Grayson was charged with cocaine distribution and firearm offenses based on items seized during the June 7, 2010 search of his residence – 2202 Wolcott Street, in Flint, Michigan. He contends the evidence should be suppressed because the affidavit in support of the

search warrant did not establish probable cause.  Grayson argues that the information concerning the Wolcott Street residence in the complaint is "bare bones and conclusory in nature, devoid of a sufficient connection of criminality to that address."  [DE#255] at 3.  Specifically, Grayson argues the affidavit was deficient because (i) there are no controlled purchases from defendant, at that location or elsewhere, (ii) Defendant Grayson is only connected to Lamonte Watson, Jr., and no other co-Defendants, (iii) no one saw any drugs, or weapons at the residence, (iv) there are no surveilled sales by Grayson to others, (v) even on the occasions mentioned where Watson goes to the Wolcott Street residence, he is not observed delivering drugs, (vi) there is not an increase in reported surveillance of other people "suddenly arriving" after Watson's visits to the residence, as would be consistent with drug trafficking, and (vii) there is no reported surveillance of Defendant Grayson leaving the residence after Watson departs to go make deliveries to other locations.  Id. at 4.  Thus, Grayson argues, the affidavit was bare bones and conclusory, like that in United States v. Hython, 443 F.3d 480 (6th Cir. 2006).

Defendant Antonio Watson was charged with cocaine distribution and firearm offenses based on items seized from the June 7, 2010 search of his residence – 514 Green Street, in Flint, Michigan.  Antonio Watson argues that the evidence should be suppressed for several reasons. First, he contends that the affidavit did not establish probable cause to believe that the items would be found at his residence; in other words, that even if there were probable cause to arrest Antonio Watson himself, that did not automatically provide probable cause to search his home. [DE#256]6 at 4, 7.  He next argues that the affidavit evidence (particularly a controlled buy over eight months prior and a claimed gun sighting at the residence over two months prior) was stale. Id. at 8-10.  Finally, he maintains that the affidavit includes a material misrepresentation entitling him to a Franks hearing.  Id. at 10.

### B. Analysis

Probable cause exists when "the facts and circumstances known to the officer warrant a prudent [person] in believing that the offense has been committed." Brooks v. Rothe, 577 F.3d 701, 706 (6th Cir. 2009) (quoting Henry v. United States, 361 U.S. 98, 102, (1959)). With regard to the probable cause necessary to support a search warrant,

> the supporting affidavit must set forth 'a nexus between the place to be searched and the evidence sought.' United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004). 'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

United States v. Penney, 576 F.3d 297, 311 (6th Cir. 2009).

Applying this standard, the Court concludes that the affidavit contained sufficient information for probable cause. Special Agent Michael Wiggins, the FBI investigator supervising the investigation of this matter, authored the affidavit. In it, Wiggins states that a team of law enforcement agents and task force officers had been investigating the drug activities of a group called the Dayton Mafia since November 2007. D.E. 118-1 at 7, 15 (Wiggins affidavit). Investigators received information from at least three confidential sources, one of whom ("CS-1") was an established source who had provided reliable information on multiple occasions, leading to previous arrests and convictions; he was believed never to have provided false information. Another confidential source, ("CS-5"), provided information based on first-hand observations and past conversations with Lamonte Watson, the individual investigators believed was the leader of the Dayton Mafia. Id. at 9-10. In the course of the investigation, Wiggins came to believe that Lamonte Watson distributed controlled substances to Dayton Mafia members, who in turn distributed to their customers. Id. at 16. Both Antonio Watson and Timothy Grayson were identified as members of the Dayton Mafia. Id. at 18.

### 1. Defendant Grayson

With regard to Grayson specifically, the affidavit included the following pieces of information:

- His vehicle had been observed numerous times in connection with surveillance of the Wolcott Street address, which was believed to be his residence.  D.E. 118-1 at 45, 47.

- CS-5 had told Wiggins that he/she had purchased drugs from Lamonte Watson in Watson's residences while Grayson was present.  CS-5 believes that, once, Watson and Grayson conducted a drug transaction while CS-5 was in the residence.  Id. at 45.

- That "[b]ased on a series of calls intercepted to and from [Lamonte Watson's cell phone number] on May 8, 2010, as well as surveillance conducted on that date, investigators believe that Lamonte Watson delivered cocaine to Timothy Grayson" at the Wolcott residence.  Id. at 46.

- That "[b]ased on a series of calls intercepted to and from [Lamonte Watson's cell phone number] on May 9, 2010, as well as surveillance conducted on that date, investigators believe that Lamonte Watson delivered cocaine to Timothy Grayson" at the Wolcott residence.  Id. at 46-47.

- Wiggins believed, based on an intercepted call on May 19, 2010, between Grayson and Lamonte Watson, that "Lamonte Watson [asked] Grayson if he wanted the remainder of a quantity of a controlled substance and Grayson [answered] that he wanted the controlled substance and only needed to call his people to further distribute it.  Id. at 47-48.

Considering the affidavit's content, the Court finds that the affidavit establishes probable cause and rejects Grayson's arguments to the contrary.  Grayson's list of items that the affidavit did not contain is of no moment because "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000) (en banc).  Similarly, Grayson's reliance on United States v. Hython, 443 F.3d 480 (2006), a case in which the Sixth Circuit concluded that the warrant was invalid, is misplaced.

In Hython, the warrant authorized the search of all persons and seizure of all drug-related property present at a certain residence based upon "one undated, acontextual controlled buy."  Id. at 482-483, 489.  Hython is readily distinguishable from the instant case for reasons regularly

noted by other courts.  For example, in <u>Hython</u>, there was no information to establish that the defendant's residence was part of a larger scale operation.  <u>See, e.g.</u>, <u>United States v. Perry</u>, No. 06-20172-BC, 2007 WL 1017570 at *10 (E.D. Mich. Apr. 3, 2007).  In contrast, here, the affidavit had information about the alleged head of the Dayton Mafia calling Grayson at, and then visiting, the Wolcott Street residence.  In <u>Hython</u>, there was no record of ongoing surveillance, <u>id.</u> at 11, in contrast to the extensive surveillance in the present case, as established by Wiggins' affidavit.  In addition, in <u>Hython</u>, the affidavit lacked any "temporal reference point" to establish that the informant's tip was not stale.  443 F.3d at 486.  This is not an issue in the instant case, due to the affidavit establishing the ongoing nature of the drug activity at the various residences to be searched.[1]

For these reasons, the Court denies Defendant Grayson's motion to suppress.[2]

### 2. Defendant Antonio Watson

With regard to Antonio Watson specifically, the affidavit included the following pieces of information:

- CS-1 reported that Antonio Watson is a cocaine trafficker in the Flint area and a member of the Dayton Mafia.  D.E. 118-1 at 62.

- CS-1 reported that the Green Street residence was Antonio Watson's residence and the address was registered as Antonio Watson's residence on his Michigan drivers license.  <u>Id.</u> at 62.

- CS-1 observed firearms in Antonio Watson's control inside the Green Street residence as recently as April 2010.  <u>Id.</u> at 62.

- In October 2009, CS-1 conducted a controlled buy of cocaine from Antonio Watson.  <u>Id.</u>

- Based on a March 12, 2010 intercepted telephone call, investigators believed that Antonio Watson was storing firearms at the Green Street residence.[3]  <u>Id.</u> at 63.

---

[1] Notably, Grayson does not contend that the affidavit information was stale.

[2] Because the court concludes that probable cause existed, it need not evaluate the parties' arguments about application of the good-faith exception in the absence of probable cause.

- On June 3, 2010, investigators intercepted a telephone call between Antonio Watson and his brother, Lamonte Watson, the alleged leader of the Dayton Mafia, in which investigators understood Antonio Watson to be telling his brother that business had been slow, that he still had cocaine left to sell, and that he had one thousand dollars to give to Lamonte Watson at that point. Id. at 64.

Based on the above information, the Court finds that the affidavit contained sufficient information to support the magistrate judge's finding of probable cause. The Court rejects Antonio Watson's arguments to the contrary.

First, in contrast to Antonio Watson's contention, the affidavit did establish probable cause to believe that contraband would be found at his residence. Although Antonio Watson is correct that establishing probable cause to arrest an individual does not automatically establish probable cause to search his home, an evaluating judicial officer is entitled to consider the totality of the circumstances and determine that there is a substantial basis for concluding that a search of a residence would produce evidence related to the crime. See United States v. Blakeney, 942 F.2d 1001, 1025, (6th Cir. 1991); see also Penney, 576 F.3d at 312 ("issuing judge is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense") (internal quotation marks omitted). Accordingly, the Sixth Circuit has held that "an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." Id. at 312 (internal quotation marks omitted). The affidavit set out information showing that Antonio Watson sold cocaine as part of a larger drug entity, which his brother led. The affidavit also established his residence in the city in which he trafficked in cocaine. The affidavit also offered evidence that

---

[3] The affidavit describes a March 12, 2010 phone call between two other individuals who describe Antonio Watson as being in possession of either a shotgun or an assault rifle at his residence and seeing Watson get the gun when a vehicle pulled up on his grass. Id. at 63-64. In a subsequent intercepted phone conversation, Antonio Watson appeared to confirm the above occurrence. Id. at 64. (The date of the subsequent conversation is unclear. Although Wiggins' affidavit states that it occurred on May 12, 2010, D.E. 118-1 at 64, the government's brief indicates that it occurred on March 12, 2010. D.E. 284 at 6.)

Antonio Watson maintained a firearm at his residence.  Accordingly the affidavit does support a probable cause determination to search the Green Street residence.

With regard to Antonio Watson's staleness argument, the determination of staleness turns on several factors:

> A determination of whether [affidavit information] is stale rests on several factors including the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).

United States v. Thomas, 605 F.3d 300, 309 (6th Cir. 2010) (internal quotation marks omitted). When the evidence concerns a long-term criminal operation, greater lapses of time between the information relied upon and the request for a search warrant are permitted.  See id. at 310; United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991).  Courts have concluded that the distribution of illegal drugs is a long-term criminal operation.  See e.g., United States v. Spikes, 158 F.3d 913, 924 (6th Cir. 1998) (manufacture and trafficking of crack cocaine over four years a "continuing criminal enterprise"); United States v. Rowell, 903 F.2d 899, 903 (2nd Cir.1990) ("[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non staleness") (quotation marks and citation omitted).  In addition, stale information may be "refreshed" if the affidavit contains recent information that corroborates the otherwise stale information.  Thomas, 605 F.3d at 310.

In light of the ongoing nature of the criminal conspiracy, as reflected in Agent Wiggins' affidavit, the over-two-months-old confidential informant's tip about seeing firearms at Antonio Watson's residence was not stale.  Nor was the confidential informant's buy, made over eight months before.  See Rowell, 903 F.2d at 903 (eighteen-month-old information not stale because evidence was of a drug distribution conspiracy); United States v. Word, 806 F.2d 658, 662 (6th Cir. 1986) (where defendant was convicted for selling prescriptions of controlled substances, four-to-five-month-old information in affidavit not stale where, inter alia, "the events alleged in

7

the affidavit were of a continuing nature"). Further, the controlled drug-buy information was refreshed by Antonio Watson's conversation, which took place only the day before the date of the affidavit and indicated that he was still actively selling cocaine. See Thomas, 605 F.3d at 310 (eight-month-old evidence not stale where evidence was "refreshed" by more recent corroborating information in the affidavit). Thus, the Court rejects Antonio Watson's staleness argument.

Finally, Antonio Watson is not entitled to a Franks hearing. In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that where the affidavit in support of the warrant contains a "false statement [made] knowingly and intentionally, or with reckless disregard for the truth" and if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause," the "search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. at 155-156. Because the affidavit in support of the warrant carries a presumption of validity, to obtain a Franks hearing, a defendant must make

> allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

Id. at 171.

As the government rightly argues, Antonio Watson's allegations do not meet the standard. Watson's brief argues that he "knows who the informant is, and the informant has never been inside Defendant's home. Defendant maintains the affiant knew or should have known that." D.E. 256 at 10. Watson fails to submit the required sworn affidavit or substitute. Watson also fails to offer any support for his assertion that the affiant (Wiggins) knew of the

8

alleged falsity of the informant's statement.  Cf. United States v. Rodriguez-Suazo, 346 F.3d 637, 648 (6th Cir. 2003) (standard not met where defendant asserted that informant's information was false, but did not present any evidence that the affiant intentionally or recklessly misrepresented facts).

For the foregoing reasons, the Court denies Antonio Watson's motion to suppress and request for a Franks hearing.

## II.   Docket entry 275

In his "Motion to Suppress Title III Intercepts," D.E. 275, Defendant Lamonte Watson, Jr. argues that he is entitled to suppression of the phone call evidence that was intercepted by law enforcement.  He first argues that law enforcement did not sufficiently "minimize" the calls they intercepted as is required.  Second, he argues that law enforcement did not demonstrate the necessity of intercepting phone calls.  Finally, Lamonte Watson requests a Franks hearing based on allegedly incorrect statements made by Agent Wiggins in his affidavit in support of his application to authorize interception of wire communications.  For the reasons explained below, the Court denies the motion.

### A.  Minimization

Title III requires that surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception."   18 U.S.C. § 2518(5). Lamonte Watson argues that the intercepts here did not meet this "minimization" requirement and therefore must be suppressed.  For the following reasons, his claim fails.

The "minimization" requirement is found in Title III of Omnibus Crime Control and Safe Streets Act of 1968, which states in pertinent part:

> No order entered under this section may authorize or approve the interception of any wire, oral, or electronic communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days . . . Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be

conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

18 U.S.C. § 2518(5). "The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." Scott v. United States, 436 U.S. 128, 140 (1978). To justify suppression on grounds of improper minimization, the Sixth Circuit has said that the defendant must show that "'monitoring agents exhibited a high disregard for [the defendant's] privacy rights or that they did not do all they reasonably could to avoid unnecessary intrusions.'" United States v. Haque, 315 F. App'x 510, 518-519 (6th Cir. 2009) (quoting United States v. Feldman, 606 F.2d 673, 679 (6th Cir. 1979)). This standard is flexible and fact-dependent. See Scott, 436 U.S. at 140 ("Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.").

The Court rejects Watson's minimization argument. As a preliminary matter, most of his allegations -- though generally phrased as a minimization argument -- have nothing to do with minimization at all. He appears to claim, for example, that some listening agents may have been Caucasian agents unable to distinguish between African-American voices. He also appears to claim that the government agents may have misidentified persons or made improper assumptions about who was in possession of the intercepted phones. But how these are connected to the minimization requirement of 18 U.S.C. § 2518(5) is entirely unclear. In addition, Watson seems to assert that the government listened to too many calls, pointing out that virtually all calls contained "code words, slang, and unclear communications." D.E. 275 at 2. But this hurts, rather than helps, Watson's claim. The harder the calls are to interpret, the more understandable any confusion becomes, and the more leeway the government is given. See Scott, 436 U.S. at 140 ("In a case such as this, involving a wide-ranging conspiracy with a large number of participants, even a seasoned listener would have been hard pressed to determine with any

precision the relevancy of many of the calls before they were completed."); United States v. Mansoori, 304 F.3d 635, 647 (7th Cir. 2002) (explaining how "[w]here an investigation involves a drug ring of unknown proportion, as in this case, the need to allow latitude to eavesdroppers is close to its zenith") (citations and quotations omitted).

Lamonte Watson identifies only two particular calls that he describes as unrelated to drugs:  two calls he describes as sex-related, one on April 26, 2010 and one on May 10, 2010. But he speaks of these calls in two sentences, without any elaboration, reasoned argument, or citations to the records with which the Court could identify the two calls.  Ultimately, Defendant here bears the burden of showing how the minimization requirements were violated.  See United States v. Giacalone, 853 F.2d 470, 482 (6th Cir. 1988) (noting that while the defendants argued that "the government bears the burden of production and persuasion concerning its compliance with the minimization requirements . . . the law is clear in this circuit that the burden of production and persuasion rests on the person seeking to suppress evidence") (citations and quotations omitted).  Watson's abbreviated and nonspecific allegations simply do not meet this standard.  See United States v. Carter, 449 F.3d 1287, 1295 (D.C. Cir. 2006) (noting that "a defendant who does not identify specific conversations that should not have been intercepted, or even a pattern of such conversations has offered no concrete indications that the government failed to meet its obligations to minimize intercepted communications" and thereby must lose his suppression claim).[4]  Accordingly, the Court rejects the minimization argument.

**B.  Necessity**

Lamonte Watson argues that the requisite necessity has not been established. Watson's arguments on this point are not entirely clear, but the Court understands him to be making the point that the wiretap interceptions were not necessary because law enforcement had other

---

[4] In addition, the government asserts that there was a reference later in one of the calls to a drug quantity or an amount of money, thus making the call pertinent to the investigation.  Watson filed no response disputing this assertion.

sources of information, including statements from confidential sources and surveillance of Lamonte Watson.  D.E. 275 at 7-8.  Watson points out that law enforcement's non-wiretap evidence included hand-to-hand buys, knowledge of Watson's automobiles and residences, and certain video surveillance of Watson "going between houses" with co-Defendant Shawn Smith. Id. at 8.

Title 18 U.S.C. § 2518 sets out the procedure for intercepting "wire, oral, or electronic communications."  The statute requires that an application to intercept communications include, inter alia, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  This necessity requirement was met here.

As the government correctly points out, Wiggins' May 2010 affidavit in support of the wiretap application "contained over ten pages of information which described the various [non-wiretap] investigative techniques which had been tried, tried and failed, or had been considered, but, not tried."  D.E. 298 at 7.  The affidavit thoroughly explains the various techniques that were used, with limited results.  See D.E. 102-3 at 36-45 (affidavit in support of wiretap application). The affidavit describes how conspiracy members had become aware of physical surveillance and modified their behavior.  Id. at 36-38.  It describes how conspiracy members had installed surveillance cameras on their residences, and that attempted trash pickups were not successful. Id. at 42.  The affidavit also contains a "need for interception" section detailing the nature of the information that the wiretaps yielded thus far, and what information law enforcement expected it might provide in future intercepts.  Id. at 29-36.  Judge Sean Cox, United States District Judge for the Eastern District of Michigan, authorized the wiretapping, thereby concluding that the application was compliant with 18 U.S.C. § 2518.  See D.E. 102 4 (order authorizing wiretapping).  For these reasons, the Court rejects Lamonte Watson's necessity argument.

**C.  Franks**

Lamonte Watson's <u>Franks</u> argument is easily dismissed.  He asserts that "[t]hroughout the Affidavit there are numerous examples of statements that may either be deliberately false or made with reckless disregard for the truth."  D.E. 275 at 10.  Watson then cites several examples where Wiggins included statements in the affidavit in support of the wiretap that were allegedly mistaken or not fully supported.  <u>Id.</u>

The requirements a defendant needs to meet to obtain a <u>Franks</u> hearing are set out above.  Lamonte Watson falls well short.  He argues only that Wiggins' statements "may" have been deliberately false or made with reckless disregard for the truth.  He, too, fails to submit the required sworn affidavit or substitute to support his assertion.  Finally, even if all of the affidavit information that Lamonte Watson asserts is incorrect actually is incorrect, that alone does not entitle him to a <u>Franks</u> hearing.  <u>See</u> <u>Franks</u>, 438 U.S. at 155-156 (requiring that (i) the affiant must have made a "false statement knowingly and intentionally, or with reckless disregard for the truth" and (ii) "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause").  Because the <u>Franks</u> requirements have not been met, the Court rejects Lamonte Watson's request for a <u>Franks</u> hearing.

**VI.    Conclusion**

For the reasons set out above, Defendant Timothy Grayson's "Motion to Suppress Evidence" [DE#255], Defendant Antonio Watson's "Motion to Suppress and for <u>Franks</u> Hearing" [DE#256] and Defendant Lamonte Watson, Jr.'s "Motion to Suppress Title III Intercepts" [DE#275] are DENIED.

IT IS SO ORDERED.

Dated:  April 25, 2011                                       s/Mark A. Goldsmith
                                                                        MARK A. GOLDSMITH
                                                                        United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 25, 2011.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager
