UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF
AMERICA,

                Plaintiff,

v.                                                                      Case No. 10-cr-20388-1
                                                                        Honorable Linda V. Parker

LAMONTE WATSON,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR REDUCED SENTENCE [851]

On November 15, 2011, a jury found Lamonte Watson guilty of Conspiracy to Distribute and to Possess with the Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1); Conspiracy to Manufacture Marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1); Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1); Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1); Manufacture of Marijuana and Aiding and Abetting the Manufacture of Marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 465). Watson was sentenced to a mandatory term of life in prison on June 27, 2012. (ECF No. 553).

On July 10, 2020, Watson filed a *pro se* Motion for Reduced Sentence. (ECF No. 851). The Court directed the Government to respond and later appointed counsel to represent Watson. (ECF No. 852; ECF No. 882). Following the appointment of counsel, both Watson and the Government filed supplemental briefs. (ECF No. 905; ECF No. 907; ECF No. 909). For the reasons articulated below, Watson's Motion [851] will be **GRANTED in part and DENIED in part**.

## BACKGROUND

Watson was born in Flint, Michigan, in 1976. (PSR ¶ 45). Sadly, his childhood was marred by significant trauma. (*Id.* ¶ 46). Watson's father, an army veteran, drank heavily and frequently become violent with Watson's mother while experiencing flashbacks to his time in service. (*Id.*). Watson's fear of these incidents was so pervasive that he developed stomach ulcers as a child. (*Id.* ¶¶ 46, 51). As a young teenager, Watson started drinking heavily and smoking marijuana. (*Id.* ¶¶ 53-54). He dropped out of high school soon after. (*Id.* ¶ 56). As Watson's teenage years progressed, he began using crack cocaine daily, and he was eventually arrested and convicted for cocaine possession in 1994. (*Id.* ¶¶ 54, 56).

Unfortunately, Watson's drug involvement continued into adulthood. In 2007, following an effort to resist arrest during a traffic stop, Watson was convicted of delivery of narcotics and assaulting a police officer. (*Id.* ¶ 39). He spent six months

in jail. (*Id.*). Eventually, Watson became involved in the drug distribution conspiracy that led to his current sentence.

Watson's participation in this conspiracy was serious, as were the quantities of drugs involved. (*Id.* ¶¶ 16, 23). Watson had a leadership role, "operated drug houses for the sale of cocaine and heroin," supplied drugs to "numerous co-conspirators," and "was involved in the manufacture and sale of marijuana." (ECF No. 596, PageID.5344-45). Watson was ultimately held responsible for 8.25 kilograms of cocaine, 2.25 kilograms of crack cocaine, and 1.085 kilograms of heroin. (*Id.* at 5349-51).

Watson is forty-five years old, incarcerated at USP Hazelton, and projected to die in prison. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 44345-039) (last visited February 26, 2022).

## ANALYSIS

Before a petitioner moves for a sentence reduction under 18 U.S.C. § 3582(c)(1), they must exhaust their administrative remedies with the BOP. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Once the exhaustion requirement is satisfied, district courts proceed through a three-step inquiry:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the

3

> Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). At
> step three, "§ 3582(c)[(1)(A)] instructs a court to consider any
> applicable § 3553(a) factors and determine whether, in its discretion,
> the reduction authorized by [steps one and two] is warranted in whole
> or in part under the particular circumstances of the case." [*Dillon v.
> United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (first four alterations

in original) (footnotes omitted); *see also United States v. Hayward*, No. 17-20515,

2020 U.S. Dist. LEXIS 106173, at *2 (E.D. Mich. June 17, 2020) (noting that the

burden is on the petitioner (citing *United States v. Rodriguez*, 896 F.2d 1031, 1033

(6th Cir. 1990))).

In addition, where the incarcerated person moves for release on their own

behalf, the Sentencing Commission's policy statement on sentence reductions, §

1B1.13 of the Sentencing Guidelines, is not "applicable," and "district courts need

not consider it." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). In such

cases, "district courts have discretion to define 'extraordinary and compelling' on

their own initiative." *Id.* at 519-20 (citing *Jones*, 980 F.3d at 1111; *United States v.

Ruffin*, 978 F.3d 1000, 1007 (6th Cir. 2020)). Finally, if "any of the three

prerequisites listed in § 3582(c)(1)(A) [are] lacking," the motion for reduction in

sentence can be denied and the other requirements need not be addressed. *Id.* at 519;

*see also Jones*, 980 F.3d at 1113-14 (noting that "[t]he obligation to explain [factual

findings] is imperative when the original sentencing judge and the compassionate

release decision judge are different persons").

4

## I. EXHAUSTION

Watson made an administrative request for reduction in sentence on June 16, 2020, citing a medical condition that makes him more vulnerable to COVID-19. (ECF No. 905-1, PageID.13391). His request was denied by the warden of USP Thomson on June 29, 2020. (ECF No. 905-2, PageID.13393).

The Government argues that Watson has not exhausted his administrative remedies because 1) he filed the instant Motion [851] without first appealing his warden's decision, and 2) his administrative request did not mention sentence disparity or rehabilitation, the circumstances he now argues are extraordinary and compelling. (ECF No. 907, PageID.13407-08). The Court disagrees.

First, the Government failed to raise exhaustion in its initial Response [856] to Watson's Motion [851]. Instead, it made this argument for the first time more than a year later in its Supplemental Brief [907]. Because of this delay, the Government's argument is not well-taken. *See Alam*, 960 F.3d at 833 ("[M]andatory claim-processing rules bind the courts only when properly asserted and not forfeited." (citing *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam))).

Second, "[t]he Sixth Circuit has never required issue exhaustion in the compassionate release context, and it 'is not mandated in any plain terms of the statute.'" *United States v. Sherrod*, No. 19-20139, 2021 U.S. Dist. LEXIS 147643, at *4 (E.D. Mich. Aug. 6, 2021) (quoting *United States v. Williams*, 473 F. Supp. 3d

772, 775 (E.D. Mich. 2020)). Indeed, "the Supreme Court has cautioned courts against imposing issue exhaustion requirements, especially where there is no adversarial administrative proceeding." *United States v. Ferguson*, 536 F. Supp. 3d 139, 142 (E.D. Mich. 2021) (citing *Sims v. Apfel*, 530 U.S. 103, 109-10 (2000)). That is the case here. *See id.* (citing *United States v. Brown*, 457 F. Supp. 3d 691, 697 (S.D. Iowa 2020)). Moreover, it would make particularly little sense to require issue exhaustion of Watson because the "Inmate Request for Compassionate Release/RIS Consideration Form" provided by USP Thomson only permitted him to request reduction based on certain limited categories, such as medical circumstances, age, or incapacitation of a family member or spouse. (ECF No. 905-1, PageID.13391). He could not have administratively raised the arguments he now makes even if he had wanted to. Against this backdrop, the Court will join the majority of Sixth Circuit district courts in holding that issue exhaustion is not required. *See, e.g.*, *United States v. Constantine*, No. 18-20655, 2021 U.S. Dist. LEXIS 188942, at *6 (E.D. Mich. Oct. 1, 2021) (collecting cases).

## II. EXTRAORDINARY AND COMPELLING REASONS

Watson asserts that his mandatory life sentence, which he would not have received under current law, combined with his rehabilitative strides in prison,

constitute an extraordinary and compelling reason for a reduction in sentence. (ECF No. 851, PageID.12893). The Court agrees.[1]

At the time Watson was convicted and sentenced, a violator of 21 U.S.C. § 841(a) who had "two or more prior convictions for a felony drug offense" was eligible, at the Government's discretion, for a sentence enhancement to "mandatory . . . life imprisonment." 21 U.S.C. § 841(b)(1)(A) (2012). Today, however, this is not the case. In 2018, Congress enacted the First Step Act ("FSA"), which, among other things, amended § 841(b)(1)(A) to narrow the types of offenses that qualify for enhanced penalties. First Step Act of 2018 § 401(a)(2), Pub. L. No. 115-391, 132 Stat. 5194, 5220-21. Now, only "serious drug felon[ies]," and not "felony drug offense[s]," can serve as predicate offenses for the sentencing enhancement Watson received. *Id.*; 21 U.S.C. § 841(b)(1)(A) (2018).

This is a consequential change. *Compare* 21 U.S.C. § 802(44) (defining "felony drug offense" as "an offense that is *punishable* by imprisonment for more than one year" (emphasis added)), *with* 21 U.S.C. § 802(57) (defining "serious drug felony" as an offense where "the offender *served* a term of imprisonment of more than 12 months" (emphasis added)). However, Congress did not make § 401(a)(2) fully retroactive. *See* FSA § 401(c). Rather, it applies only to defendants whose

---

[1] The Court elects not to address Watson's third argument that his "mandatory life sentence [w]as a penalty for exercising his constitutional right to a jury trial." (ECF No. 851, PageID.12893).

sentences were not in place at the time of its enactment on December 21, 2018. *Id.* Thus, for a defendant subjected to a § 841(b)(1)(A) enhancement prior to that date, the FSA not only offers no recourse, but creates an extraordinary disparity.

That is the situation Watson faces here. He had only two prior convictions at the time he was sentenced—possession of cocaine in 1994 and delivery of a narcotic in 2007—both of which were cited by the Government to enhance his sentence to mandatory life. (PSR ¶¶ 38-39; ECF No. 80, PageID.153). However, because Watson received no prison time on the 1994 charge and only six months in jail on the 2007 charge, neither would qualify as an enhancement predicate under current law. (PSR ¶¶ 38-39); 21 U.S.C. § 802(57). Consequently, if sentenced today, Watson would only be subject to a mandatory minimum of ten years, with a guideline range of 360 months to life, rather than a death-in-prison sentence. (ECF No. 905, PageID.13384; ECF No. 907, PageID.13412).

Despite the Government's arguments to the contrary, (ECF No. 907, PageID.13412), this is an extraordinary disparity. For a person living in prison, the prospect of one day being able to return to society, even if that day is a long way off, is of incalculable value. *See* ACLU, A LIVING DEATH: LIFE WITHOUT PAROLE FOR NONVIOLENT OFFENSES 182-93 (2013), https://www.aclu.org/sites/default/files/field_document/111813-lwop-complete-report.pdf [https://perma.cc/CM9P-ZU36]. Accordingly, even if Watson deserved a

8

sentence at the higher end of his guideline range, which, as described below, he does not, the disparity between his current sentence without the possibility of release and that guidelines sentence would still be profound.

Over the past year, various panels of the Sixth Circuit have reached different conclusions as to whether, and to what extent, disparities like this can be considered in the "extraordinary and compelling reasons" analysis.

Initially, in *United States v. Tomes* and *United States v. Wills*, the Sixth Circuit suggested that any disparity caused by the non-retroactivity of the FSA was not an extraordinary and compelling reason for a sentence reduction. *See Tomes*, 990 F.3d 500, 505 (6th Cir. 2021) (noting in dicta that "using § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the [FSA's] reforms" would "render § 401(c) useless"); *Wills*, 991 F.3d 720, 723-24 (6th Cir. 2021) (reasoning that non-retroactivity cannot be an extraordinary and compelling reason because "the ordinary practice [in federal sentencing] is to apply new penalties to defendants not yet sentenced" (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012))).

Two months after those decisions were released, however, the Sixth Circuit carved out an exception. *See United States v. Owens*, 996 F.3d 755, 763 (6th Cir. 2021) (holding that as long as it is not the *sole* basis for finding extraordinary and compelling reasons, "a district court may include, along with other factors, the

9

disparity between a defendant's actual sentence and the sentence that he would receive if the [FSA] applied"). According to *Owens*, "this middle path" was "not foreclose[d]" by the court's earlier opinions in *Tomes* or *Wills* because neither of those decisions had considered whether sentence disparity, *in combination with other factors*, could present an extraordinary and compelling reason for reduction. *Id.* (citing *Tomes*, 990 F.3d at 504-05; *Wills*, 991 F.3d at 722-24).

Unfortunately, the clarity brought by *Owens* was short-lived. In *United States v. Jarvis*, decided less than a month later, another panel of the Sixth Circuit claimed that *Owens*'s discussion of *Tomes* had been "inaccurate," and that a "faithful reading" required courts to "exclude[] non-retroactive [FSA] amendments from . . . extraordinary or compelling reasons, [regardless of] whether a defendant relies on the amendments alone or combines them with other factors." 999 F.3d 442, 446 (6th Cir. 2021). According to the *Jarvis* panel, because *Owens* directly conflicted with *Tomes*'s holding, it was required to disregard *Owens* and follow *Tomes*, the earlier decision. *Id.* at 445-46 (citing *Salmi v. Sec'y of Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)).

In the eight months since *Jarvis* was published, the dispute it created has resulted in a deeply entrenched intra-circuit split. *Compare, e.g.*, *United States v. McCall*, 20 F.4th 1108, 1114 (6th Cir. 2021) ("Faced with the conflict between *Owens* and *Jarvis*, courts 'must follow the first one[.]' Here, that is *Owens*."

(alteration in original) (citation omitted)), *with, e.g.*, *United States v. Hunter*, 12 F.4th 555, 564-65, 564 n.4 (6th Cir. 2021) (dismissing *Owens* as non-binding and expanding the *Jarvis* rule to "case[s] involv[ing] non-retroactive precedent, as opposed to statutes"), *and United States v. McKinnie*, 24 F.4th 583, 589 (6th Cir. 2022) (following *Hunter*). As Watson's case does not concern the non-retroactivity of new judicial precedent (the issue presented in *Hunter*, *McCall*, and *McKinnie*), the Court need not wade into this latest disagreement. *See McKinnie*, 24 F.4th at 589 (explaining that even if *Owens* was "good law" it should not have controlled the outcome in *McCall* or "*Hunter*, which ultimately resolved a question different from that raised in the prior cases").

Thus, the only issue for the Court to decide here is whether *Owens* or *Jarvis* controls, and for the reasons stated herein, the Court finds the answer is plainly *Owens*. *See Jarvis*, 999 F.3d at 449 (Clay, J., dissenting) (explaining that *Tomes*'s pronouncement about the FSA was non-binding dicta because the panel explicitly decided the case on the § 3553(a) factors "alone"); *United States v. Wingate*, No. 11-20481, 2021 U.S. Dist. LEXIS 137482, at *13-14 (E.D. Mich. July 23, 2021) (explaining that in analyzing *Tomes* and *Wills*, "*Jarvis* improperly focused its attention on the factors [that had been] presented to the district courts in the first instance, rather than those actually discussed by the appellate panels"); *see also United States v. Ruvacalba*, — F.4th —, 2022 U.S. App. LEXIS 4235, at *26-28

(1st Cir. Feb. 15, 2022) (describing *Jarvis*'s arguments as "a straw man"); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (agreeing that *Tomes* concerned only whether FSA non-retroactivity "standing alone" could serve as the basis for a sentence reduction).

Indeed, even assuming counterfactually that *Owens*'s reading of *Tomes* and *Wills* was as flawed as *Jarvis* suggested, the *Jarvis* court would still have been obligated to follow *Owens*. *See Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003) ("[A panel of the Sixth Circuit is] not free to pick and choose the portions of a prior published decision that [it] will follow and those that [it] will disregard. *Nor do[es] [it] enjoy greater latitude in situations where [its] precedents purportedly are tainted by analytical flaws . . . .*" (emphasis added)); *see also Wingate*, 2021 U.S. Dist. LEXIS 137482, at *12 (explaining that *Jarvis* was required "to take at face value *Owens*'s description of what it was doing (i.e. distinguishing, rather than [disregarding]), as well as its summary and construction of *Tomes* and *Wills*" (citing *United States v. Hardin*, 539 F.3d 404, 412 (6th Cir. 2008))).

Against this backdrop, the Court will join the other district courts that have followed *Owens*,[2] the earliest binding decision directly on-point, *see Salmi*, 774 F.2d at 689, and will consider "the disparity between [Watson's] actual sentence and the

---

[2] To the extent *Hunter* and *McKinnie* followed *Jarvis* in "contravening" the precedent settled in *Owens*, they must also be abandoned. *McCall*, 20 F.4th at 1114.

sentence that he would [have] receive[d] if the [FSA] applied" alongside his evidence of rehabilitation.[3] *Owens*, 996 F.3d at 763; *see, e.g.*, *United States v. Dale*, No. 92-81127, 2022 U.S. Dist. LEXIS 9091, at *12 (E.D. Mich. Jan. 18, 2022); *United States v. Watkins*, No. 10-20545, 2022 U.S. Dist. LEXIS 6567, at *12 (E.D. Mich. Jan. 12, 2022); *Wingate*, 2021 U.S. Dist. LEXIS 137482, at *16.

Watson was detained pending trial and has been in custody for nearly twelve years. (ECF No. 8). He has used that time to make extraordinary strides toward rehabilitation. In addition to earning his GED, Watson has completed academic courses in economics, sociology, history, and literature. (ECF No. 909-1, PageID.13428, 13436-37). He has taken self-improvement classes on topics like finance, stress management, and decision making. (*Id.* at 13428). He has passed the BOP's rigorous Drug Education Class, which required him to reckon with the effects of his drug involvement on his family, life, and community. (*Id.* at 13438); *see* FED. BUREAU OF PRISONS, TRIAD DRUG TREATMENT EVALUATION PROJECT FINAL REPORT OF THREE-YEAR OUTCOMES 69 (2000),

---

[3] This conclusion does not "defy Congress's intent [or] upset separation-of-powers principles," as the Government argues. (ECF No. 856, PageID.12935).

> [T]there is a significant difference between automatic vacatur and resentencing of an entire class of sentences . . . and allowing for the provision of individual relief in the most grievous cases. Indeed, the very purpose of § 3582(c)(1)(A) is to provide a "safety valve" that allows for sentence reductions when there is not a specific statute that already affords relief but "extraordinary and compelling reasons" nevertheless justify a reduction.

*United States v. McCoy*, 981 F.3d 271, 285-86 (4th Cir. 2020) (citations omitted); *accord Ruvacalba*, — F.4th —, 2022 U.S. App. LEXIS 4235, at *27-29; *McGee*, 992 F.3d at 1047.

https://www.bop.gov/resources/pdfs/TRIAD/TRIAD_CH_4.pdf

[https://perma.cc/2WT8-6TAH]. He has even received approval and training to be a

companion for inmates placed on suicide watch. (ECF No. 909-1, PageID.13439).

Most recently, Watson became one of a small number of individuals selected to

participate in USP Hazelton's "Inside-Out" Prison Exchange Program. (*Id.* at

13429). That Program, which pairs "outside" college students with "inside" prison

students like Watson, "creates a paradigm shift for participants, encouraging

transformation and change." *Inside-Out Prison Exchange*, W. VA. UNIV. DEP'T

SOCIO. & ANTHROPOLOGY, https://soca.wvu.edu/students/undergraduate-

students/inside-out-prison-exchange [https://perma.cc/7JUM-ZC7C] (last visited

Feb. 26, 2022).

The Government acknowledges these "positive strides," but argues that

Watson's disciplinary history nevertheless proves that he has not been rehabilitated.

(ECF No. 907, PageID.13412). True, Watson has been cited twice for disciplinary

infractions since he was first detained in 2010, but only the first of these incidents

involved a physical altercation. (ECF No. 905-4, PageID.13400). Moreover, that

incident occurred nearly eight years ago and did not result in serious injury for either

party. (*Id.*). Today, Watson has been discipline-free for more than six years. (*Id.*).

This is more than half the time he has been in custody. Accordingly, these incidents

do not alter the Court's conclusion that Watson's rehabilitation has been extraordinary.

Many people in Watson's position, faced with the seeming impossibility of release, might have given up trying to better themselves. Watson did not. Indeed, even as group programming was curtailed by the BOP during the pandemic, Watson turned to self-study modules and continued to work towards rehabilitation. (ECF No. 909-1, PageID.13428). These efforts not only demonstrate a significant change in Watson's attitude since sentencing, but also suggest a profound shift in his propensity to recidivate. (ECF No. 905-3, PageID.13396) (listing Watson's recidivism level as "low risk" as of October 2021).

Although Watson's rehabilitation alone is not an extraordinary and compelling reason to reduce his sentence, *see* 28 U.S.C. § 994(t), the combination of his rehabilitation and gross sentence disparity is. *Owens*, 996 F.3d at 763.

## III. Section 3553(a) Factors

The Government argues that release is not appropriate under the § 3553(a) factors. (ECF No. 907, 13413). The Court agrees. Nevertheless, "[i]t bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Under § 3582(c)(1)(A), "[a] district court [can], for instance, reduce but not eliminate a defendant's prison sentence." *Id.*; *see, e.g.*, *United States v.*

*McDonel*, 513 F. Supp. 3d 752, 761 (E.D. Mich. 2021) (reducing sentence from 1,285 months to 240 months); *Wingate*, 2021 U.S. Dist. LEXIS 137482, at *28 (reducing sentence from fifty-seven years to seventeen years and one day); *United States v. Ball*, No. 06-cr-20465, 2021 U.S. Dist. LEXIS 107594, at *17 (E.D. Mich. June 9, 2021) (reducing sentence from 360 months to 240 months). It is this type of relief that is warranted here.

Section 3553 of Title 18 of the U.S. Code provides, in pertinent part:

**(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

[. . .]

**(5)** any pertinent policy statement—

[. . .]

16

> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also Jones*, 980 F.3d at 1114 (explaining that "'as long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor" (alterations in original) (citation omitted) (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010))).

Watson's crimes were very serious. For more than two years, he directed a large-scale drug trafficking organization and was responsible for bringing significant amounts of cocaine and heroin into his community. This transpired, moreover, after he had twice been convicted of drug-related crimes. In consideration of these facts, Judge Goldsmith found that "[a] significant sentence [was] necessary" for deterrence and protection of the public, and that "no factor . . . crie[d] out for any kind of departure or variance from the guidelines." (ECF No. 596, PageID.5382).

The Court does not disturb these determinations, however, it must also recognize that much has changed since Watson was sentenced. First, as described above, Watson has made extraordinary progress in prison. *See Pepper v. United States*, 562 U.S. 476, 504-05 (2011). Although there is no definitive point at which someone becomes "fully rehabilitated," Watson has presented persuasive evidence that he is no longer the man he was at the time of sentencing. Second, if sentenced

17

today in the first instance, Watson would not be subject to a mandatory life sentence. *See* FSA § 401(a)(2). This is strong evidence that such a sentence is no longer a "just punishment" for an individual in his circumstances. 18 U.S.C. § 3553(a)(2)(A). In light of these developments, the Court finds that a prison term of 300 months is warranted under the § 3553(a) factors.

In reaching this conclusion, the Court gives "great weight," *United States v. Wright*, 991 F.3d 717, 719 (6th Cir. 2021) (quoting *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013)), to "the need to avoid unwarranted sentence disparities," § 3553(a)(6), as well as Watson's evidence of rehabilitation in prison, which "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper*, 562 U.S. at 492 (quoting § 3553(a)(1)). In addition, the Court believes that a sentence of 300 months adequately reflects the seriousness of Watson's offense while promoting respect for the law. § 3553(a)(2). *See United States v. Stern,* No. 5:07-CR-00524, 2008 U.S. Dist. LEXIS 102071, at *30 (N.D. Ohio Dec. 17, 2008) ("Respect for the law is promoted by punishments that are fair, . . . not those that simply punish for punishment's sake." (citing *United States v. Cernik*, No. 07-20215, 2008 U.S. Dist. LEXIS 56462, at *25 (E.D. Mich. July 25, 2008))). Finally, although 300 months is a downward variance from the guideline range Watson would receive if sentenced today, the Court believes it is more than sufficient, in light of new developments, to

address Judge Goldsmith's concerns about protection of the public and deterrence. § 3553(a)(2)(B), (C).

Watson has made extraordinary progress since he entered prison and has maintained a clear disciplinary record for more than half his time in custody. (ECF No. 905-3, PageID.13395; ECF No. 905-4, PageID.13400). In light of this new evidence, it appears that he has already been substantially deterred from future criminal activity. (ECF No. 905-3, PageID.13396) (rating Watson "low risk" of reoffending). Moreover, when Watson is eventually released, he will be much older and statistically less likely to engage in criminal activity. *See* U.S. SENT'G COMMISSION, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf [https://perma.cc/3AM5-9CMK]. A shorter sentence will also allow Watson to access certain programming that he might have otherwise been ineligible for. *See McDonel*, 513 F. Supp. at 759-60 (citing § 3553(a)(2)(D)). Because of Watson's initial mandatory life sentence, these were not factors Judge Goldsmith could have taken into account at the time of sentencing. (ECF No. 596, PageID.5381-82) (noting that Watson's "fate [was] really sealed by the Congressional determination that . . . there should be a mandatory life sentence without release" and explaining that he did not "have any significant freedom in imposing major portions of the sentence").

Finally, a sentence reduction to 300 months will not disturb the general deterrent effect had by Watson's initial arrest and sentence. *See United States v. Browning*, No. 19-20203-2, 2021 U.S. Dist. LEXIS 38058, at *12-13 (E.D. Mich. Mar. 2, 2021) ("In terms of both specific and general deterrence, there is overwhelming evidence in the scientific literature that 'the certainty of being caught is a vastly more powerful deterrent than the [severity of the] punishment.'" (quoting U.S. DEP'T JUST., NAT'L INST. JUST., FIVE THINGS ABOUT DETERRENCE 1 (2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf [https://perma.cc/PV5R-9QP4])); *see also United States v. Sherrod*, No. 19-20139, 2021 U.S. Dist. LEXIS 147643, at *16 (E.D. Mich. Aug. 6, 2021) ("[T]o the extent that incarceration can promote deterrence, . . . any specific or general deterrent effect would have been felt at the time [the defendant] was caught and prosecuted and would not be minimized by the Court granting him compassionate release." (footnote omitted)).

The "Court's overarching duty" under the § 3553(a) factors is "to 'impose a sentence sufficient, *but not greater than necessary*' to serve the purposes of sentence." *Pepper*, 562 U.S. at 493 (emphasis added) (quoting § 3553(a)). This sentence does that. It is a just punishment that respects the findings of the original sentencing judge while also taking into account legal and factual developments that have arisen in the intervening period.

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion for Reduced Sentence [851] is **GRANTED in part and DENIED in part**. Defendant's sentence is reduced to **300 MONTHS**. Defendant's supervised release period remains **120 MONTHS**.

**IT IS FURTHER ORDERED** that an Amended Judgment will issue within one week of the entry of this Order.

**IT IS FURTHER ORDERED** that Defendant's Motion to Take Judicial Notice [854] is **DENIED as moot**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 28, 2022